UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRITHORN BULK A/S,

Petitioner,

-v-

DURON CAPITAL LLC,

Respondent.

22 Civ. 9628 (JPC)

ORDER

JOHN P. CRONAN, United States District Judge:

Petitioner Trithorn Bulk A/S ("Trithorn") has petitioned to confirm an arbitration award (the "Award") issued against Respondent Duron Capital LLC ("Duron"). Duron has not opposed the Petition or otherwise appeared in this action. As discussed below, none of the grounds for refusing to confirm an arbitration award articulated in the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") are present here. Further, Duron has not moved to vacate the Award, let alone established that any of the grounds for vacatur under the Federal Arbitration Act ("FAA") apply. The unopposed Petition therefore is granted.

## I. Background

### A. Facts[1]

Trithorn brings this action to confirm and enforce the Award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, 330 U.N.T.S. 38 (June 10, 1958), incorporated by Chapter 2 of the FAA, 9 U.S.C. §§ 201-208, and under the FAA, *id.*

[1] These facts are drawn from the Petition, which is unopposed, and from the supporting documentation filed as exhibits to the Declaration of Patrick F. Lennon, *see* Dkt. 10.

§ 1 *et seq.* Dkt. 1 ("Petition") ¶ 1. Trithorn is a foreign business entity with a business address in Copenhagen, Denmark, *id.* ¶ 2, and Duron is a domestic business entity with a principal address in Miami, Florida, *id.* ¶ 3. The Award was issued in New York City, *id.* ¶ 1*,* following a demand for arbitration issued pursuant to a voyage charter party contract, *id.* ¶ 18, which was entered into on October 28, 2020 between Duron as Charterer and Trithorn as Disponent Owner, *id.* ¶ 7. *See generally* Dkt. 10-1 (the "Charter").[2] Under the Charter, Trithorn, which owned the ocean-going motor vessel LIPSI, Petition ¶ 2, agreed to load wheat in or around San Lorenzo, Argentina for carriage and discharge at Puerto Cabello, Venezuela. *Id.* ¶ 7; Charter at 5. The Charter established that the laycan, the "[r]ange of dates within [which] the hire contract must start," Mar. Admin., U.S. Dep't of Transp., Glossary of Shipping Terms 62 (2008), *available at* https://www.maritime.dot.gov/sites/marad.dot.gov/files/docs/resources/3686/glossaryfinal.pdf (last visited June 23, 2023), would last from November 13, 2022 to November 20, 2022, Petition ¶ 7; Charter at 5, and that the laytime, which is the "period of time allowed for unloading and loading," Thomas J. Schoenbaum, Schoenbaum's Admiralty and Maritime Law § 11:15 (6th ed. 2018), would begin at 8:00 a.m. on the next working day following the tendering and acceptance of a Notice of Readiness or NOR, Charter at 5, 24; *see also* Petition ¶ 10. A Notice of Readiness, in turn, indicates that "the ship is ready to load." Mar. Admin., *supra*, at 73.

On November 10, 2020, the LIPSI arrived in Argentina and proceeded to the Rosario Roads anchorage, where it was to wait until shipment permits were issued and Duron communicated that the cargo was ready to be loaded at a designated terminal. Petition ¶ 9. On Friday, November 13, 2020, the start of laycan, the LIPSI tendered its Notice of Readiness. *Id.* ¶ 10. Pursuant to the

[2] Because the document at Docket Number 10-1 contains multiple parts that are each separately paginated, pincites refer to the ECF-generated page numbers rather than to the page numbers displayed on the document itself.

Charter, laytime began to run at 8:00 a.m. on the following Monday, November 16, 2020. *Id.* Because the required shipment permits had not been issued, however, the LIPSI remained at Rosario Roads rather than proceeding to a terminal to load the cargo. *Id.* ¶ 11. Upon the expiration of laycan on November 20, 2020, the LIPSI was ordered to move from Rosario Roads to Villa Constitucion Roads, where it arrived on November 21, 2020. *Id.* ¶ 12. On November 28, 2020, the required permits were issued, and the LIPSI travelled to the designated terminal to load the cargo. *Id.* ¶ 14. Loading occurred from November 30, 2020 to December 5, 2020. *Id.* ¶ 15. Due to these delays, Trithorn claimed $159,520.31 from Duron in demurrage, *id.* ¶ 16, which is "[a] penalty charge against shippers or consignees for delaying the carrier's equipment or vessel," Mar. Admin., *supra*, at 37. Duron, by contrast, blamed delays in loading the cargo on a union strike at the loading terminal. Petition ¶ 11.

The Charter provided that "[a]ll disputes arising out of this contract shall be arbitrated at New York . . . and be subject to U.S. Law." Charter at 17. After Duron refused to pay the claimed demurrage, Trithorn issued a demand for arbitration. Petition ¶¶ 17-18. The arbitrators were Lucienne C. Bulow, Louis Epstein, and Louis P. Sheinbaum, the chair (collectively, the "Arbitrators"). Dkt. 10-2 ("Award") at 2.[3] The Arbitrators issued their unanimous Award in New York on October 3, 2022, in which they found that Duron owed demurrage of $158,278.12, pre-Award interest of $9,723.26, attorneys' fees and costs of $48,517.12, and arbitrators' fees of $20,000, amounting to a total of $236,518.50. Petition ¶ 19; Award at 22. The Award further provided that it "may be entered as a judgment in any court of competent jurisdiction." Award at 23. As of the date of the Petition, Duron had not paid the amount the Arbitrators awarded to Trithorn. Petition ¶ 24.

[3] Because the Award was not paginated, pincites refer to ECF-generated page numbers.

**B. Procedural History**

On November 10, 2022, Trithorn filed the Petition to confirm the Award. Dkt. 1. Trithorn initially attempted to serve the Petition on Duron pursuant to Rule 5(b)(1) of the Federal Rules of Civil Procedure by e-mailing it to Duron's counsel in the underlying arbitration on or around November 14, 2022. Dkt. 8. On December 19, 2022, the Court issued an Order holding that such service was inadequate under the FAA, 9 U.S.C. § 9, because Duron is a resident of Florida, and because a petition to confirm an arbitration award must be served under Rule 4 of the Federal Rules of Civil Procedure when the respondent does not live within the judicial district in which the petition was filed. Dkt. 13. Subsequently, on December 22, 2022, pursuant to section 48.062 of the Florida Statutes, Trithorn served Duron via its registered agent, United States Corporation Agents, Inc., which was designated pursuant to section 605.0113 of the Florida Statutes. *See* Dkts. 14, 23; *see also* Div. of Corps., Fla. Dep't of State, Duron Capital LLC, https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=DURONCAPITAL%20L200000611870&aggregateId=flal-l20000061187-6163c513-67e4-429c-bd7d-2a9a65a5d7bf&searchTerm=duron%20capital&listNameOrder=DURONCAPITAL%20L200000611870 (last visited June 23, 2023) (identifying registered agent for Duron Capital). On February 7, 2023, the Court ordered Duron to appear and respond to the Petition by March 13, 2023. Dkt. 20. Duron has not submitted a response to the Petition or otherwise appeared in this action.

## II. Discussion

**A. The Arbitration Award**

**1. Applicable Law**

The Court has jurisdiction over the Petition pursuant to the Convention, 21 U.S.T. 2517, 330 U.N.T.S. 38 (June 10, 1958), which has been implemented in U.S. law in Chapter 2 of the

FAA, 9 U.S.C. §§ 201-208. *See Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (explaining that 9 U.S.C. § 203 confers "federal jurisdiction over actions to confirm or vacate an arbitral award that is governed by the Convention"). The Convention "appl[ies] to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal," as well as "to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." Convention, art. I(1). In implementing the Convention, the FAA likewise provides that the Convention applies to "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial," although it does not cover "[a]n agreement or award arising out of such a relationship which is entirely between citizens of the United States . . . unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relationship with one or more foreign states." 9 U.S.C. § 202.

Thus, an arbitration agreement falls within the scope of the Convention if four requirements are met: "(1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope." *Dumitru v. Princess Cruise Lines, Ltd.*, 732 F. Supp. 2d 328, 335 (S.D.N.Y. 2010) (quoting *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999)). With respect to the fourth requirement, "[t]he Convention applies to 'arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought.'" *Zeiler v. Deitsch*, 500 F.3d 157, 164 (2d Cir. 2007) (quoting 9

U.S.C. § 202). An action within the Convention's scope is "deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203.

A party to an arbitration resulting in an arbitral award that falls under the Convention may seek an order of confirmation from a district court within three years of the award. *Id.* § 207; *see also id.* § 203 ("The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."). A court "shall confirm" an arbitration award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id.* § 207. "Article V of the Convention specifies seven exclusive grounds upon which courts may refuse to recognize an award." *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005); Convention, art. V; *Temsa Ulasim Araclari Sanayi ve Ticaret A.S. v. CH Bus Sales, LLC*, No. 22 Civ. 492 (JPC), 2022 WL 3974437, at *3 (S.D.N.Y. Sept. 1, 2022) (listing the seven grounds); *Commodities & Mins. Enter., Ltd. v. CVG Ferrominera Orinoco, C.A.*, No. 19 Civ. 11654 (ALC), 2020 WL 7261111, at *3 (S.D.N.Y. Dec. 10, 2020) (same).

Specifically, the Convention provides that recognition and enforcement of an award "may be refused" only if the party against whom the award is invoked "furnishes . . . proof" that: (1) the parties to the arbitration agreement were "under some incapacity" or the agreement "is not valid" under the law designated by the parties, or, in the event they have not designated any, the law of the country where the award was made; (2) "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case"; (3) "[t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration," although any "part of the

award which contains decisions on matters submitted to arbitration may be recognized and enforced"; (4) "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place"; or (5) "[t]he award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." Convention, art. V(1). Recognition and enforcement may also be refused if "the competent authority in the country where recognition and enforcement is sought finds that" (6) "[t]he subject matter of the difference is not capable of settlement by arbitration under the law of that country" or (7) "[t]he recognition or enforcement of the award would be contrary to the public policy of that country." *Id.* art. V(2). The burden of establishing one of these defenses is a "heavy one, as 'the showing required to avoid summary confirmance is high.'" *Encyclopaedia Universalis S.A.*, 403 F.3d at 90 (quoting *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997)).

Where, like here, "the arbitration took place in the United States," the award also is "subject to the FAA provisions governing domestic arbitration awards." *Zeiler*, 500 F.3d at 164 (citing Convention, art. VI(1)(e)). Section 10(a) of the FAA enumerates four grounds for vacatur of an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). It is beyond cavil that judicial review of an arbitration award under the FAA—consistent with the Convention—is "very limited . . . to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993) (citation omitted).

The Second Circuit has instructed that "[c]onfirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Zeiler*, 500 F.3d at 169 (citing *Encyclopaedia Universalis S.A.*, 403 F.3d at 90). When confirming an award, a district judge "does little more than give the award the force of a court order." *Id.* And in doing so, a court affords significant deference to the arbitrator's decision. *See Thai-Lao Lignite (Thai.) Co. v. Gov't of Lao People's Democratic Republic*, 492 F. App'x 150, 152 (2d Cir. 2012) ("[A]lthough the Convention recognizes that an award may not be enforced where predicated on a subject matter outside the arbitrator's jurisdiction, it does not sanction second-guessing the arbitrator's construction of the parties' agreement." (internal quotation marks omitted)). But even if a petition to confirm is unopposed, a court must still ensure that judgment is proper as a matter of law under the undisputed facts. "[D]efault judgments in the context of confirmation and vacatur proceedings are 'generally inappropriate'"; an "unopposed petition should instead be resolved under a summary judgment framework." *Cessna Fin. Corp. v. Gulf Jet LLC*, No. 14 Civ. 2149 (ALC), 2015 WL 337556, at *3 (S.D.N.Y. Jan. 26, 2015) (citing *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109-10 (2d Cir. 2006)).

**2. Analysis**

As a preliminary matter, the Court finds that the Charter falls within the scope of the Convention, as the four jurisdictional requirements are satisfied. *See Dumitru*, 732 F. Supp. 2d at 335; 9 U.S.C. § 202. First, the Charter is a written agreement. *See generally* Charter. Second, the United States of America is a signatory of the Convention. *See* New York Arbitration Convention, Contracting States (last visited on June 23, 2023), https://www.newyorkconvention.org/countries; *see also* 9 U.S.C. § 201. Third, the subject matter of the Charter—the transportation of wheat—is commercial in nature. *See* Charter at 5. Lastly, the Charter was a non-domestic agreement under 9 U.S.C. § 202 because the transport of wheat by a Danish company from one foreign nation to another is not entirely domestic in scope. *See Yusuf Ahmed Alghanim & Sons,* 126 F.3d at 19 ("The dispute giving rise to this appeal involved two nondomestic parties and one United States corporation, and principally involved conduct and contract performance in the Middle East. Thus, we consider the arbitral award leading to this action a non-domestic award and thus within the scope of the Convention."). Under the Convention, the Court has jurisdiction over the Petition.

Trithorn has adequately shown that there is no genuine issue of material fact precluding judgment in its favor. First, the Court finds that the Arbitrators' findings adhered to the terms of the Charter and were well within the bounds of their authority. As mentioned, the Charter mandated arbitration in New York subject to U.S. law in the event of a dispute under the Charter. Charter at 17-18. The Charter further provided that each party was to select one arbitrator, and the two arbitrators chosen by the parties were to select the third. *Id.* at 17. The Arbitrators were chosen in that manner and were accepted by the parties. Award at 11. Each party submitted preliminary claim submissions, then engaged in discovery. *Id.* at 12. They further submitted witness statements from Diego Garat, a senior chartering manager of Trithorn, and from Alejandro

Duron, the owner of Duron. *Id.* Lastly, they agreed to arbitrate on the papers alone, and submitted final claim submissions in support of their positions. *Id.* at 13.

In the arbitration, Duron claimed that it was not liable for demurrage because the delay in loading the LIPSI was caused by a strike that occurred at the loading terminal from November 17, 2020 to November 30, 2020, and because the Charter contained a clause providing that demurrage would not be owed for delays caused by a strike. Award at 15; *see also* Charter at 14-15. The Arbitrators, however, concluded that, as Charterer, Duron had a non-delegable obligation to provide the cargo within the Charter's laycan, and that this obligation included a non-delegable obligation to ensure satisfaction of the required legal formalities, including the issuance of any required permits, during that period. Award at 17. Because Duron failed to arrange for the issuance of permits required for the wheat to be loaded either by November 13, 2020, when laycan began, or by November 16, 2020, when laytime began to run, the Arbitrators concluded that Duron was in breach of its obligations under the Charter. *Id.* Furthermore, the Arbitrators found that that breach of Duron's obligations was the proximate cause of the delay in loading the LIPSI. *Id.* at 18-19. As a result, the Arbitrators concluded that Trithorn was entitled to recover demurrage in the amount of $166,725. *Id.* at 19. The Arbitrators further considered Duron's counterclaims, which included counterclaims of $18,958.38 and $13,483.63 for despatch, *id.* at 16, which is "an incentive payment paid by the vessel to the charterer for loading and unloading the cargo faster than agreed," Mar. Admin., *supra*, at 37, and a counterclaim for the return of a settlement payment of $25,000, Award at 15. The counterclaim for despatch of $18,958.38, which pertained to the loading of the cargo on the LIPSI, was denied because the LIPSI was not loaded faster than agreed but rather its loading was delayed, and the counterclaim for despatch of $13,483.63, which pertained to the unloading of the LIPSI, was granted in the amount of $8,446.88, based on the

Arbitrators' determination of the time used in unloading the ship. *Id.* at 20. Lastly, the counterclaim for the return of the settlement payment was denied because Duron's mistake, unjust enrichment, and economic duress arguments were found by the Arbitrators to lack merit. *Id.* at 21. Lastly, having set forth their Award, the Arbitrators provided that it "may be entered as a judgment in any court of competent jurisdiction." *Id.* at 23.

The burden of proof with respect to the affirmative defenses set forth in the Convention or grounds for vacatur under the FAA lies with the respondent. *Encyclopaedia Universalis S.A.*, 403 F.3d at 90. Here, the respondent, Duron, has not appeared in this action, nor has it opposed the Petition or moved to vacate the Award. Where, as here, the "non-movant does not respond, its failure to contest issues not resolved by the record will weigh against it." *D.H. Blair & Co.*, 462 F.3d at 109; *see also PKT Assocs., Inc. v. Granum Grp., LLC*, No. 18 Civ. 1169 (VEC), 2018 WL 3392879, at *1 (S.D.N.Y. July 12, 2018) (granting a petition to confirm an arbitration award pursuant to the Convention and explaining that "if a petition to enforce an arbitration award is unopposed, a court need not inquire on its own into whether an exception to enforcement applies" (citation omitted)); *Agility Pub. Warehousing Co. v. Supreme Foodservice GmbH*, 840 F. Supp. 2d 703, 710 (S.D.N.Y. 2011) ("Pursuant to the Convention and the FAA, a district court must confirm an arbitral award unless the party seeking vacatur establishes any of the limited exceptions listed in § 10(a) of the FAA or one of the grounds for refusal specified in the Convention."). Further, there is nothing in the record to suggest that any of the defenses in the Convention or grounds for vacatur in section 10(a) of the FAA apply in this case.

The Court also confirms the amount awarded by the Arbitrators. In the arbitration, Duron did not dispute the amount of demurrage charged, only whether Trithorn was entitled to demurrage given that, according to Duron, the delay in loading the LIPSI was due to a strike at the loading

terminal. *See* Award at 15-16. Similarly, while Duron disputed the proper basis for computing the despatch to which it was entitled for unloading the LIPSI, *id.* at 16, the Arbitrators sided with Trithorn's position as to how despatch should be calculated, *id.* at 20, and Duron did not claim that Trithorn calculated despatch incorrectly under that methodology, *see id.* at 15-16. Thus, the Court sees no basis upon which to question the amount due to Trithorn for freight, which was equal to the demurrage owed to Trithorn less the despatch owed to Duron. In addition, the Arbitrators awarded Trithorn pre-Award interest, attorneys' fees, and arbitrators' fees. Under the Charter, the Arbitration was "to be conducted in accordance with the rules of the Society of Maritime Arbitrators Inc." Charter at 17. Those rules provide that "[t]he Panel shall grant any remedy or relief which it deems just and equitable." Soc'y of Mar. Arbs., Inc., Maritime Arbitration Rules § 30 (effective June 1, 2022), https://smany.org/wp-content/uploads/2023/06/SMA-ARBITRATION-RULES-6-1-2022.pdf (last visited June 23, 2023). Furthermore, the rules explicitly provide that "[t]he Panel . . . shall assess arbitration expenses and fees . . . and shall address the issue of attorneys' fees and expenses incurred by the parties. The Panel is empowered to award reasonable attorneys' fees and expenses or costs incurred by a party . . . ." *Id.* In exercising that authority, the Arbitrators reasonably awarded Trithorn pre-Award interest at the prime rate, Award at 21-22, awarded Trithorn its attorneys' fees and costs in connection with the arbitration, *id.* at 22, and required Duron to reimburse Trithorn for its share of the Arbitrators' fees, *id.* The Court finds no basis to second-guess the Arbitrators' decision to award those amounts to Trithorn.

In addition, the Award provides that should Duron not pay the principal, pre-Award interest, and attorneys' fees and costs due by November 3, 2022, "interest at the prime rate from the date of this Final Award shall be paid until such day as the amount is paid, or this Final Award

is made an Order of the court, whichever first occurs." *Id.*[4] While the prime rate has risen gradually since October 3, 2022, the date on which the Final Award was issued, *see* JPMorgan Chase & Co., Historical Prime Rate, https://www.jpmorganchase.com/about/our-business/historical-prime-rate (last visited June 23, 2023), it has averaged roughly 7.5% over that period, and the Court will therefore award pre-judgment, post-Award interest at that rate from October 3, 2022 to the date of judgment on the outstanding principal, pre-Award interest, and attorneys' fees owed by Duron.

In sum, the undisputed facts—specifically, the Charter and the Award—show the absence of any genuine issue of fact that the Award should be confirmed, and nothing in the record suggests that any of the defenses listed in the Convention or grounds for vacatur listed in the FAA preclude confirmation. *See D.H. Blair & Co.*, 462 F.3d at 110; *see also Cessna Fin. Corp.*, 2015 WL 337556, at *4 (granting an unopposed petition to confirm an arbitral award because the petitioner's submissions "establish[] the existence of a valid and binding contract and arbitration agreement between the parties" and "a 'barely colorable' justification for the Award"). "Although Petitioners have not presented this Court with copies of all the materials on which the [Arbitrators] relied, there is no reason to doubt the [Arbitrators'] interpretation of those materials." *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Earth Constr. Corp.*, No. 21 Civ. 1443 (JPC), 2021 WL 4975690, at *3 (S.D.N.Y. Oct. 25, 2021) (internal quotation marks omitted). Plus, "nothing suggests that the arbitration decision was made arbitrarily, exceeded the [Arbitrators'] jurisdiction,

---

[4] The Award does not, however, provide that Duron is liable for post-Award interest on the $20,000 in arbitrators' fees that Duron was also ordered to pay. *See* Award at 21-22. Accordingly, this Order grants pre-judgment interest accruing from October 3, 2022, *i.e.*, the date of the Award, only on the amount of $216,518.50, which includes the principal for outstanding demurrage less outstanding despatch, pre-Award interest from February 1, 2021 to October 3, 2022, and attorneys' fees and costs in connection with the arbitration, but does not include the arbitrators' fees.

or otherwise was contrary to law." *Id.* (internal quotation marks omitted). Trithorn is therefore entitled to judgment as a matter of law, and the Court confirms Trithorn's timely application for confirmation of the Award. The Court also awards post-judgment interest "from the date of the entry of the judgment." 28 U.S.C. § 1961(a).[5]

**III. Conclusion**

For the reasons above, the Petition is granted. The Clerk of the Court is respectfully directed to enter judgment in the amount of $236,518.50, with pre-judgment interest on $216,518.50 of that amount accruing from October 3, 2022 to the date of judgment at a rate of 7.5%. Post-judgment interest will accrue at the statutory rate. The Clerk of the Court is also respectfully directed to close this case.

SO ORDERED.

Dated: June 23, 2023
New York, New York

JOHN P. CRONAN
United States District Judge

[5] At the conclusions of both the Petition and Trithorn's memorandum of law in support of confirmation and enforcement of the Award, Trithorn also asks the Court to award "costs[] and attorneys' fees incurred in connection with this proceeding." Petition at 5, Dkt. 9 at 11. Trithorn has offered no argument for why an award of attorneys' fees and costs in connection with this proceeding would be appropriate, nor does the Charter appear to contain any language providing for the award of fees or costs incurred in connection with an action in federal court to confirm or enforce an arbitration award. *See generally* Charter. Accordingly, to the extent Trithorn seeks its fees and costs in connection with this litigation, that request is denied.